**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 21-cr-139 (TNM)** |
| | : | |
| **RACHAEL LYNN PERT, and** | : | |
| **DANA JOE WINN** | : | |
| **Defendants.** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence the defendant, Rachael Lynn Pert, to three months home confinement, 24 months of probation, forty (40) hours of community service, and $500 in restitution.

**I.     Introduction**

The defendants, Dana Joe Winn and Rachael Lynn Pert, both Navy veterans, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than one million dollars of property damage.

Both defendants pleaded guilty to one count of 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds. As explained herein, the sentenced requested above is appropriate in this case because (1) the defendants traveled from Florida to the District of Columbia, during which they recorded a Facebook live video wherein Defendant Winn states "[g]ot her flags, come with her flagpole, that way I can hit Antifa in the head if need be" demonstrating he was aware of the potential for violence that day and prepared accordingly; (2)

1

both defendant's gained entry into the Capitol building shortly after the building was breached; (3) both defendants, by their own admissions, were part of a large group that were tear-gassed in an effort to clear the building; (4) as both defendants walked further away from the building and looked out over the Capitol grounds Defendant Pert stated "[w]ow, all those barricades are down now.  Remember when we came in? There was barricades."  Defendant Winn responded "[t]he patriots took em."and; (5) directly after exiting the Capitol building, in a video recorded by Defendant Winn, Defendant Pert and Defendant Winn engaged in the following exchange:

> Pert: [talking to Winn] They said we stopped the vote.
> Winn: We stopped the vote?
> Pert: That's what they said, some people were saying we did stop the vote.
> Winn: Isn't that what we were trying to do?
> [40 seconds later]:
> Pert: [talking to unknown person] We were inside!
> Winn: And they were gassing us.
> Pert: We were trying to storm them to stop the vote and they were starting tear gassing and forcing us out.

This conversation makes clear the defendants' intentions for coming to the District, and specifically for entering the U.S. Capitol building: stopping the certification of the electoral college vote.

Even though neither defendant personally engaged in violence or property destruction during the riot, both encouraged and celebrated the events of that day as they were happening.  In the same video referenced above, shortly after both defendants exited the building, they did not immediately leave Capitol grounds or otherwise comply with law enforcement.  They engaged in conversations with other rioters, bragging about being tear-gassed by law enforcement and forced out of the building, while they tried to "stop the vote."  Finally, and perhaps most notably, as both defendants walked further away from the building and looked out over the Capitol grounds

Defendant Pert stated "[w]ow, all those barricades are down now.  Remember when we came in?  There was barricades."  Defendant Winn responded "[t]he patriots took em."

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for their actions alongside so many others, the riot likely would have failed. Here, the defendant's participation in a riot that actually succeeded in halting the Congressional certification combined with the defendant's individual actions described above and below, renders the requested sentence both necessary and appropriate in this case.

## II.     Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 36 (Statement of Offense), at 1-7. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to the defendant's conduct and behavior on January 6.

### Dana Joe Winn and Rachael Lynn Pert's Role in the January 6, 2021 Attack on the Capitol

Dana Joe Winn and Rachael Lynn Pert, in a domestic relationship at the time, traveled together from Florida to Washington D.C. to attend then President Trump's rally scheduled for January 6th.  During their drive to Washington D.C. Winn recorded a Facebook live video, wherein he described his dissatisfaction with recent events and politics stating "[c]ause us as American patriots, we're tired of all this shit. It's time to make a stand.  I never really knew how

deep and corrupt all this crap was and how far back it's gone, but America needs to wake up. We're on the verge of fucking losing it."

After arriving in the District and attending the rally both defendants traveled to the Capitol and entered the building, remaining in the building for roughly thirty-five minutes. While inside, the defendants were in multiple portions of the building, to include the Rotunda and Statuary Hall. Moreover, once the defendants exited the building, they remained on the steps of the U.S. Capitol, among the large crowd of rioters directly outside the building and bragged to others about being inside the building and being tear-gassed by law enforcement officers. A portion of the defendants' actions once they exited the building were recorded by Winn, to include the following exchange:

> Pert: [talking to Winn] They said we stopped the vote.
> Winn: We stopped the vote?
> Pert: That's what they said, some people were saying we did stop the vote.
> Winn: Isn't that what we were trying to do?
> [40 seconds later]:
> Pert: [talking to unknown person] We were inside!
> Winn: And they were gassing us.
> Pert: We were trying to storm them to stop the vote and they were starting tear gassing and forcing us out.

Finally, a portion of this recording also captured Pert describing what she observed as she looked out from the Capitol steps, over the throngs of rioters still bearing down on the building. Notably, Pert stated "[w]ow, all those barricades are down now. Remember when we came in? There was barricades." Defendant Winn then responded "[t]he patriots took em."

*Dana Joe Winn and Rachael Lynn Pert's Interview*

On January 19, 2021 both defendants voluntarily agreed to an interview with the FBI, wherein they provided truthful and candid information about their role in the Capitol Riots. Specifically, both defendants stated they traveled to the District to support the President, and their country. Moreover, both defendants admitted to entering the Capitol building on January 6,

2021 and identified themselves in the MPD flyer that was circulated in the days following the riot (pictured below).  Finally, Defendant Winn confirmed that the flagpole seized from his home was the same flagpole pictured in the MPD flyer below and directed the FBI to various articles of clothing inside his home that he was wearing while inside the building.



*(Figure 1 Metropolitan Police Department BOLO)*

*The Charges and Plea Agreement*

On January 25, 2021, both defendants were charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and 40 U.S.C. §§ 5104(e)(2)(G). On January 26, 2021, both defendants were arrested at their homes in Florida. On February 19, 2021, both defendants were charged by a five-count indictment with 18 U.S.C. §§ 1512(c)(2) and 2 (aiding and abetting), 1752(a)(1) and (2), and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On October 4, 2021, both defendants pleaded guilty to Count Two of the Indictment, charging them with a violation of 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building and Grounds. By plea agreement, both defendants agreed to pay $500 in restitution to the Department of the Treasury.

## III.     Statutory Penalties

The defendant now faces a sentencing on a single count of 18 U.S.C. § 1752(a)(1). As noted by the plea agreement, the defendant faces up to one year of imprisonment and a fine of up to $100,000. The defendant must also pay restitution under the terms of her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).[1]

## IV.     The Sentencing Guidelines and Guidelines Analysis

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. Id. at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual

---

[1] The Court may also impose a term of supervised release of not more than one year, as well as up to three years of probation.  18 U.S.C. §§ 3583(b)(3) and 3561(c)(2), USSG §5D1.2(a)(3) and USSG §5B1.1, comment. n.1(a). *See also* PSR ¶ 92-93 and 98-99.

sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. Id. at 49.

The government agrees with the Sentencing Guidelines calculation set forth in the PSR. According to the PSR, the U.S. Probation Office calculated both defendants' adjusted offense level under the Sentencing Guidelines as follows:

| | |
|---|---|
| Base Offense Level (U.S.S.G. §2B2.3(a)) | 4 |
| Specific Offense Characteristics (U.S.S.G. §2B2.3(b)(1)(A))[2] | 2 |
| Acceptance of Responsibility (USSG §3E1.1(a)) | -2 |
| Total Adjusted Offense Level | 4 |

*See* PSR at ¶¶ 31-36.

The U.S. Probation Office calculated both defendants' criminal history as a category I, which is not disputed. PSR at ¶ 44. Accordingly, the U.S. Probation Office calculated each defendant's total adjusted offense level, after acceptance, at 4, and their corresponding Guidelines imprisonment range at 0-6 months. PSR at ¶¶ 36, 88. The defendants plea agreements contain an agreed-upon Guideline's calculation that mirrors the U.S. Probation Office's calculation.

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement

---

[2] The PSR incorrectly applies this specific offense characteristic because the trespass occurred "at a secure government facility" under U.S.S.G. §2B2.3(b)(1)(A)(i). PSR ¶ at 32. As indicated in the defendants plea agreements, the specific offense characteristic applies because the trespass occurred "at any restricted building or grounds" under U.S.S.G. §2B2.3(b)(1)(A)(vii). ECF No. 35 at 3.   On January 6, 2021, the U.S. Capitol was restricted because protectees of the United States Secret Service were visiting.  *See* 18 U.S.C. § 1752(c)(1)(B).  Because a two-level increase applies under either theory, there is no difference to the final offense level.

community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita*, 551 U.S. at 349. As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise,'" and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108. Accordingly, courts must give "respectful consideration to the Guidelines." Id. at 101. As the Third Circuit has stressed:

> The Sentencing Guidelines are based on the United States Sentencing Commission's in-depth research into prior sentences, presentence investigations, probation and parole office statistics, and other data. U.S.S.G. §1A1.1, intro, comment 3. More importantly, the Guidelines reflect Congress's determination of potential punishments, as set forth in statutes, and Congress's on-going approval of Guidelines sentencing, through oversight of the Guidelines revision process. See 28 U.S.C. § 994(p) (providing for Congressional oversight of amendments to the Guidelines). Because the Guidelines reflect the collected wisdom of various institutions, they deserve careful consideration in each case. Because they have been produced at Congress's direction, they cannot be ignored.

*United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2005). "[W]here judge and Commission both determine that the Guidelines sentences is an appropriate sentence for the case at hand, that sentence likely reflects the § 3553(a) factors (including its 'not greater than necessary' requirement)," and that significantly increases the likelihood that the sentence is a reasonable one." *Rita*, 551 U.S. at 347 (emphasis in original). In other words, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough*, 552 U.S. at 89.

Here, while the Court must balance all of the § 3553 factors to fashion a just and appropriate sentence, the Guidelines unquestionably provide the most helpful benchmark. As this Court

knows, the government has charged a considerable number of persons with crimes based on the January 6 riot. This includes hundreds of felonies and misdemeanors that will be subjected to Guidelines analysis. In order to reflect Congress's will—the same Congress that served as a backdrop to this criminal incursion—the Guidelines will be a powerful driver of consistency and fairness moving forward.

## V.     Sentencing Factors Under 18 U.S.C. § 3553(a)

The Court should next consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49-50. Under § 3553(a), "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). The purposes of sentencing, pursuant to § 3553(a)(2), are as follows:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)     to afford adequate deterrence to criminal conduct;
(C)     to protect the public from further crimes of the defendant; and
(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Some of the factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, id.; the need for the sentence to reflect the seriousness of the offense and promote respect for the law,  § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); the Guidelines and the Guideline range, 18 U.S.C. § 3553(a)(4), and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6).

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was the one of

the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

While each defendant should be sentenced based on their individual conduct, as we now discuss, this Court should note that each person who entered the Capitol on January 6 without authorization did so under the most extreme of circumstances. As they entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement officials and smelled chemical irritants in the air. Make no mistake, no rioter was a mere tourist that day.

Additionally, while looking at the defendant's individual conduct, we must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment. Had the defendant personally engaged in violence or destruction, he or she would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on the part of the defendant is therefore not a mitigating factor in misdemeanor cases.

As a veteran of the U.S. Navy, the defendant was well aware of the great jeopardy posed by violent entry into the Capitol by the rioters. This is further made clear in the comments they made that day, describing clashes with law enforcement in the building, the destruction of the barricades outside the building, and the ensuing chaotic scene on the Capitol grounds. Moreover, both defendants were inside the building shortly after the initial breach, at a time when violence against law enforcement and property destruction were widespread both inside and outside the building.

While in the building, the defendants were captured on video inside Statuary Hall, as well as the first floor on the east side of the building, with large groups of rioters. When confronted by law enforcement inside the building, who were attempting to prevent a further breach of the building, the defendant's persisted, ultimately bragging about their efforts once outside the building. Finally, the defendant's comments, both before and after the riot, are telling. It is clear the Winn, when referencing Antifa, was fully aware of the potential for violence on January 6th, even if his expectations didn't fully contemplate the scope of what the Capitol riot ultimately became. Additionally, immediately upon exiting the building both defendants can be heard bragging to other rioters about successfully stopping the certification, expressly stating that is what they came to do. Accordingly, the nature and the circumstances of this offense establish the appropriateness of the government's requested sentence.

### B. The History and Characteristics of the Defendant

#### a. *Defendant Pert*

As set forth in the PSR, Rachael Lynn Pert's criminal history consists of three misdemeanor convictions for Disorderly Conduct/Battery on a Law Enforcement Officer/Resisting Law Enforcement, Driving While License Suspended or Revoked, and Battery. PSR at ¶ 41-43. Pert

reported to the PSR writer that she enlisted in the U.S. Navy after graduating high school in 1999 and was discharged in 2000.  Pert has maintained employment for several years, most recently working as a construction laborer and housekeeper. Pert has been compliant with her conditions of pre-trial release.

To be clear, Pert's military service is laudable, and the government has considered that when fashioning its recommendation to the Court. However, it is also worth noting that as a former servicemember her voluntary decision to storm a guarded government building is troubling in light of her former military service and training.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[3] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

---

[3] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70; *see United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37 ("As other judges on this court have recognized, democracy requires the cooperation of the citizenry. Protesting in the Capitol, in a manner that delays the certification of the election, throws our entire system of government into disarray, and it undermines the stability of our society. Future would-be rioters must be

13

deterred.") (statement of Judge Nichols at sentencing).

The gravity of these offenses demands deterrence. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The actions of both defendants, both before and during the riots, demonstrate the need for specific deterrence. As stated above, Winn described bringing a flagpole from Florida to Washington D.C. to use if he encountered Antifa at the rally. Moreover, in the video recorded by Winn, described above, both defendants can be heard bragging to other rioters about their actions inside the building.  Specifically, both defendants bragged about being tear-gassed by law enforcement during the bedlam taking place inside the building, all while continuing to remain on the steps of the Capitol mere feet from where they exited the building.  Pert's comments concerning the barricades being destroyed and overrun, and Winn's response of "the patriots took em," only serve to amplify the need for specific deterrence.

The government acknowledges that the defendant's accepted responsibility early by entering into this plea agreement and were cooperative with law enforcement. On the other hand, that cooperativeness and early acceptance of responsibility came after the defendants were confronted with ample evidence concerning their involvement in the events of January 6. Regardless, both defendants' early acceptance of responsibility, cooperation with law

enforcement, and honesty concerning their participation in the Capitol Riots is reflected in the misdemeanor plea agreement offered by the government.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress.[4] Each offender must be sentenced based on their individual circumstances, but with the backdrop of the January 6 riot in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes. A probationary sentence should not necessarily become the default.[5] Indeed, the government invites the Court to join Judge Lamberth's admonition that "I don't want to create the impression that probation is the automatic outcome here because it's not going to be." *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19; *see also United States v. Valerie Ehrke*,

---

[4] Attached to this supplemental sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants.  That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

[5] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 ("Judge Lamberth said something to the effect . . . 'I don't want to create the impression that probation is the automatic outcome here, because it's not going to be.' And I agree with that. Judge Hogan said something similar.") (statement of Judge Friedman).

The government and the sentencing courts have already begun to make meaningful distinctions between offenders. Those who engaged in felonious conduct are generally more dangerous, and thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed, but engaged in aggravating factors, merit serious consideration of institutional incarceration. Those who trespassed, but engaged in less serious aggravating factors, deserve a sentence more in line with minor incarceration or home detention.

The defendants have pleaded guilty to Count Two of the Indictment, charging them with a violation of 18 U.S.C. § 1752(a)(1).  For one thing, although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol, how long she remained inside, the nature of any statements she made (on social media or otherwise), whether she destroyed evidence of his participation in the breach, etc.—help explain the differing recommendations and sentences.  And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement.  *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

Moreover, assessing disparities, and whether they are unwarranted, requires a sufficient pool of comparators. In considering disparity, a judge cannot "consider all of the sentences not yet

imposed." *United States v. Godines*, 433 F.3d 68, 69–71 (D.C. Cir. 2006). "The most a judge can do is consider those other sentences that do exist," and "[t]he comparable sentences will be much smaller in the early days of any sentencing regime than in the later." *Id*.; *see generally United States v. Accardi*, 669 F.3d 340, 346 (D.C. Cir. 2012) ("Without more, two allegedly similar cases constitute too small a sample size to support a finding of an 'unwarranted disparity' in sentences."). In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").

Sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and large number of victims. Thus, even though many of the defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

As the number of sentences in the Capitol breach misdemeanor cases increase and the pool of comparators grows, the effect on sentences of obviously aggravating considerations should become more apparent. The same is true for obviously mitigating factors, such as a defendant's efforts to prevent assaults on police.

While no previously sentenced case contains the specific mix of aggravating and mitigating factors present here, the Court may also consider the sentence imposed on Jessica and Joshua Bustle for reference.  *See United States v. Jessica and Joshua Bustle*, 1:21-cr238 (TFH).  In that case, both defendants pleaded guilty to one count of § 18 U.S.C. 5104(e)(2)(G) for Parading, Demonstrating, or Picketing in a Capitol Building, and were sentenced to 60 and 30 days of home detention (respectively), as well as 24 months' probation, 40 hours of community service, and $500 restitution.  In that case, both defendant's traveled from outside the District to attend the days events, and entered the U.S. Capitol through a door near the Rotunda approximately thirty minutes after that entrance had been breached. Both defendants were inside the building for approximately twenty minutes before exiting after law enforcement cleared the Rotunda.  Moreover, Jessica Bustle posted several social media posts with rhetoric similar to that of Pert and Winn, including expressing dissatisfaction with the 2020 Presidential election and bragging about her role on January 6th.

As stated above, the defendants in the instant case also traveled to Washington D.C. to attend the rally, entered the Capitol Building during the riots, were captured on video on the East Front House side, and engaged in political rhetoric centered on stopping the certification of the electoral college vote. However, notable distinctions include the fact that Pert and Winn acknowledged the law enforcement presence inside the building and being tear gassed and driven out of the building.  Moreover, the defendants in the instant case pleaded guilty to a Class A misdemeanor, whereas Jessica and Joshua Bustle received a similar sentence to that which the government is requesting here after pleading to a Class B misdemeanor.

The Court should also consider the case of Kevin Cordon, a Capitol breach case sentenced before this Court. *See United States v. Kevin Cordon*, 1:21-CR-00277 (TNM).  In that case, Cordon

pleaded guilty to one count of 18 U.S.C. § 1752(a)(1) for Entering and Remaining in a Restricted Building or Grounds and was sentenced to 12 months' probation, 100 hours community service, a $4000 fine, and $500 restitution.[6]

In that case Cordon, along with his brother (co-defendant) traveled to Washington D.C. to attend the rally at the Ellipse. When they arrived at the rally both defendants were wearing light body armor and carrying gas masks. Additionally, Kevin Cordon had an American flag draped over his shoulders as if it was a cape. When both defendants arrived at the Capitol they observed violence against law enforcement officers, ultimately entering the U.S. Capitol building through the Senate Wing door shortly after the initial breach of the building. After walking around the building, and at various times recording inside the building, both defendants exited the building. Finally, Kevin Cordon was interviewed outside the Capitol building, wherein he stated, generally, that he was in the District because he believed the 2020 Presidential election was stolen.

The comparisons between the instant case and Cordon are numerous. To start, Winn and Pert are pleading guilty to the same charge. Moreover, the conduct at issue in both cases is not dissimilar. Specifically, in both cases the defendant's traveled to the District to attend the rally and are captured on video inside the building early on during the breach. Although Pert and Winn do not carry gas masks or don light armor, the defendants in both cases express similar rhetoric in an attempt to justify their actions on January 6th.

*Comparing Pert and Winn's Conduct*

As stated above, Pert and Winn's conduct on January 6th are nearly identical. They traveled together from Florida to the District and were together throughout their time at the Capitol.

---

[6] In *Cordon*, the government requested a sentence of thirty days incarceration, twelve months supervised release, and $500 restitution.

Moreover, neither defendant committed a criminal act independent of the other.  Finally, with the exception of the Facebook live video posted by Winn during their drive to D.C. (which Pert was present for and pictured in), both Pert and Winn expressed similar rhetoric concerning their desire to stop the certification of the electoral vote count being conducted by the Joint Session of Congress that day.  Accordingly, the government believes identical sentences for both defendant's is appropriate in this case.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## VI.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained herein, some of those factors support a sentence of incarceration and some support a more lenient sentence. Balancing these factors, the government recommends that this Court sentence the defendant to three months home confinement, 24 months of probation, forty (40) hours of community service, and $500 in restitution. Such a sentence protects the community, promotes

respect for the law, and deters future crime by imposing restrictions on their liberty as a consequence of their behavior, while recognizing their early acceptance of responsibility.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:    _/s/_____
BRANDON K. REGAN
Assistant United States Attorney
MD Attorney No. 1312190043
555 Fourth Street, N.W.
Washington, DC 20530
Brandon.regan@usdoj.gov
(202) 252-7759

**APPENDIX**

Table 1: Cases in which the government recommended a probation sentence without home detention[1]

| Defendant Name | Case Number | Offense of Conviction | Government Recommendation | Sentence Imposed |
|---|---|---|---|---|
| Morgan-Lloyd, Anna | 1:21-CR-00164-RCL | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 36 months' probation, 120 community service hours, $500 restitution |
| Ehrke, Valerie | 1:21-CR-00097-PLF | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 36 months' probation, $500 restitution |
| Bissey, Donna | 1:21-CR-00165-TSC | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 40 hours community service, $500 restitution | 14 days incarceration, 60 hours community service, $500 restitution |
| Hiles, Jacob | 1:21-CR-00155-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 36 months' probation, 60 hours community service, $500 restitution | 24 months' probation, 60 hours community service, $500 restitution |

Table 2: Cases in which the government recommended a probation sentence with home detention

| Defendant Name | Case Number | Offense of Conviction | Government Recommendation | Sentence Imposed |
|---|---|---|---|---|
| Bustle, Jessica | 1:21-CR-00238-TFH | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 40 hours community service, $500 restitution | 60 days of home detention, 24 months' probation, 40 hours community service, $500 restitution |
| Bustle, Joshua | 1:21-CR-00238-TFH | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 40 | 30 days home detention, 24 months' probation, 40 hours community service, $500 restitution |

---

[1] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

| | | | | |
|---|---|---|---|---|
| | | | hours community service, $500 restitution | |
| Doyle, Danielle | 1:21-CR-00324-TNM | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 probation | 2 months' probation, $3,000 fine, $500 restitution |
| Bennett, Andrew | 1:21-CR-00227-JEB | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 3 months of home detention, 24 months' probation, 80 hours community service, $500 restitution |
| Mazzocco, Matthew | 1:21-CR-00054-TSC | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 45 days incarceration, 60 hours community service[2], $500 restitution |
| Rosa, Eliel | 1:21-CR-00068-TNM | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution | 12 months' probation, 100 hours community service, $500 restitution |
| Gallagher, Thomas | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 60 hours community service, a fine, and $500 restitution | 24 months' probation, 60 hours community service, $500 restitution |
| Vinson, Thomas | 1:21-CR-00355-RBW | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 3 years' probation, 60 hours community service, $500 restitution | 5 years' probation, $5,000 fine, $500 restitution, 120 hours community service |
| Dillon, Brittiany | 1:21-CR-00360-DLF | 40 U.S.C. § 5104(e)(2)(D) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 60 days home detention, 3 years' probation, $500 restitution |
| Sanders, Jonathan | 1:21-CR-00384-CJN | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 | 36 months' probation, 60 hours community service, $500 restitution |

[2] The government believes the Court's 10/4/2021 minute entry in this case is incorrect and the sentence requires 60 *hours* of community service, not 60 *months*.

| | | | hours community service, $500 restitution | |
|---|---|---|---|---|
| Fitchett, Cindy | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Sweet, Douglas | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Cordon, Sean | 1:21-CR-00269-TNM | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 2 months' probation, $4000 fine |
| Wilkerson, John IV | 1:21-CR-00302-CRC | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 36 months' probation, $2500 fine, 60 hours community service, $500 restitution |
| Jones, Caleb | 1:21-CR-00321-JEB | 40 U.S.C. § 5104(e)(2)(G) | 3 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 2 months home detention, 24 months' probation, $500 restitution, 100 hours community service |
| Brown, Terry | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 45 days home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, $500 restitution, 60 hours community service |
| Wrigley, Andrew | 1:21-CR-00042-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 18 months' probation, $2000 fine, $500 restitution, 60 hours community service |
| Parks, Jennifer | 1:21-CR-00363-CJN | 40 U.S.C. § 5104(e)(2)(G) | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution | 24 months' probation, $500 restitution, 60 hours community service |

| Reimler, Nicholas | 1:21-CR-00239-RDM | 40 U.S.C. § 5104(e)(2)(G) | 2 months home detention, 36 months' probation, 60 hours community service, $500 restitution | 1 month home detention, 36 months' probation, 60 hours community service, $500 restitution |
|---|---|---|---|---|

Table 3: Cases in which the government recommended a sentence of incarceration

| Defendant Name | Case Number | Offense of Conviction | Government Recommendation | Sentence Imposed |
|---|---|---|---|---|
| Curzio, Michael | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | Not applicable | 6 months incarceration (time served), $500 restitution |
| Hodgkins, Paul | 1:21-CR-00188-RDM | 18 U.S.C. § 1512(c)(2) | 18 months incarceration | 8 months incarceration, 24 months' supervised release, $2000 restitution |
| Dresch, Karl | 1:21-CR-00071-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 6 months incarceration (time served), $500 restitution | 6 months incarceration (time served), $500 restitution |
| Jancart, Derek | 1:21-CR-00148-JEB | 40 U.S.C. § 5104(e)(2)(D) | 4 months incarceration, $500 restitution | 45 days incarceration, $500 restitution |
| Rau, Erik | 1:21-CR-00467-JEB | 40 U.S.C. § 5104(e)(2)(D) | 4 months incarceration, $500 restitution | 45 days incarceration, $500 restitution |
| Hemenway, Edward | 1:21-CR-00049-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 45 days incarceration, 60 hours community service, $500 restitution |
| Reeder, Robert | 1:21-CR-00166-TFH | 40 U.S.C. § 5104(e)(2)(G) | 6 months incarceration, $500 restitution | 3 months incarceration, $500 restitution |
| Bauer, Robert | 1:21-CR-00049-TSC | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 45 days incarceration, 60 hours community service, $500 restitution |
| Vinson, Lori | 1:21-CR-00355-RBW | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 5 years' probation, $5,000 fine, $500 restitution, 120 hours community service |
| Griffith, Jack | 1:21-CR-00204-BAH | 40 U.S.C. § 5104(e)(2)(G) | 3 months incarceration, $500 restitution | 90 days home detention, 36 months' probation, $500 restitution |
| Torrens, Eric | 1:21-CR-00204-BAH | 40 U.S.C. § 5104(e)(2)(G) | 2 weeks incarceration, $500 restitution | 90 days home detention, 36 months' probation, $500 restitution |

| Gruppo, Leonard | 1:21-CR-00391-BAH | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 90 days home detention, 24 months' probation, $3,000 fine, $500 restitution |
|---|---|---|---|---|
| Ryan, Jenna | 1:21-CR-00050-CRC | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 60 days incarceration, $1000 fine, $500 restitution |
| Croy, Glenn | 1:21-CR-00162-BAH | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 90 days home detention, 14 days community correctional facility, 36 months' probation, $500 restitution |
| Stotts, Jordan | 1:21-CR-00272-TJK | 40 U.S.C. § 5104(e)(2)(G) | 45 days incarceration, $500 restitution | 60 days home detention, 24 months' probation, $500 restitution, 60 hours community service |
| Fairlamb, Scott | 1:21-CR-00120-RCL | 18 U.S.C. § 1512(c)(2), 18 U.S.C. § 111(a)(1) | 44 months incarceration, 36 months' supervised release, $2000 fine | 41 months incarceration, 36 months supervised release, $2000 restitution |
| Camper, John | 1:21-CR-00325-CKK | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 60 days incarceration, $500 restitution, 60 hours community service |
| Rukstales, Bradley | 1:21-CR-00041-CJN | 40 U.S.C. § 5104(e)(2)(G) | 45 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Cordon, Kevin | 1:21-CR-00277-TNM | 18 U.S.C. § 1752(a)(1) | 30 days incarceration, 12 months supervised release, $500 restitution | 12 months' probation, 100 hours community service, $4000 fine, $500 restitution |
| Chansley, Jacob | 1:21-CR-00003-RCL | 18 U.S.C. § 1512(c)(2) | 51 months incarceration, 36 months supervised release, $2000 restitution | 41 months incarceration, 36 months supervised release, $2000 restitution |
| Mish, David | 1:21-CR-00112-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |
| Lolos, John | 1:21-CR-00243-APM | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 14 days incarceration, $500 restitution |
| Scavo, Frank | 1:21-CR-00254-RCL | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 60 days incarceration, $5000 fine, $500 restitution |
| Abual-Ragheb, Rasha | 1:21-CR-00043-CJN | 40 U.S.C. § 5104(e)(2)(G) | 30 days incarceration, $500 restitution | 60 days home detention, 36 months' probation, 60 hours community service, $500 restitution |
| Peterson, Russell | 1:21-CR-00309-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 30 days incarceration, $500 restitution |

| Simon, Mark | 1:21-CR-00067-ABJ | 40 U.S.C. § 5104(e)(2)(G) | 45 days incarceration, $500 restitution | 35 days incarceration, $500 restitution |
|---|---|---|---|---|
| Ericson, Andrew | 1:21-CR-00506-TNM | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 20 days incarceration (consecutive weekends), 24 months' probation, $500 restitution |
| Pham, Tam Dinh | 1:21-CR-00109-TJK | 40 U.S.C. § 5104(e)(2)(G) | 60 days incarceration, $500 restitution | 45 days jail time, $1000 fine, $500 restitution |
| Nelson, Brandon | 1:21-CR-00344-JDB | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 24 months' probation, $2500 fine, $500 restitution, 50 hours community service |
| Markofski, Abram | 1:21-CR-00344-JDB | 40 U.S.C. § 5104(e)(2)(G) | 14 days incarceration, $500 restitution | 24 months' probation, $1000 fine, $500 restitution, 50 hours community service |
| Marquez, Felipe | 1:21-CR-00136-RC | 18 U.S.C. § 1752(a)(2) | 4 months incarceration, 1 year supervised release, $500 restitution | 3 months home detention, 18 months' probation, $500 restitution |